**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| Nicole M.,[1]<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security Administration,<br><br>Defendant. | Case No. 2:25-cv-02055-BNW<br><br>**ORDER** |

This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Nicole M.'s ("Plaintiff") application for benefits under Titles II and XVI of the Social Security Act. Plaintiff moves for this Court to reverse the Commissioner's decision and remand for further administrative proceedings or award the benefits sought. ECF No. 12 at 15. The Commissioner opposes and asks this Court to affirm the Commissioner's decision. ECF No. 14 at 1. Because portions of the ALJ's decision regarding Plaintiff's residual functioning capacity and the vocational expert's testimony were not supported by substantial evidence, this Court remands for further proceedings.

## I. BACKGROUND

On September 27, 2021, Plaintiff applied for Disability Insurance Benefits pursuant to Titles II and XVI of the Social Security Act, alleging an onset date of September 2, 2021. AR[2]

---

[1] In the interest of privacy, this opinion only uses the first name and last initial of the nongovernmental party.

[2] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 9).)

293, 298. Plaintiff's claim was denied initially, and on reconsideration. *Id.* at 121–22, 143, 168. Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"), and the appointed ALJ conducted a hearing on November 14, 2024. *Id.* at 70-101. On December 16, 2024, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 102-116. The Appeals Council declined to review, and the ALJ's decision became final on August 29, 2025. *Id.* at 6-8. Plaintiff timely filed this action for judicial review under 42 U.S.C. §§ 405(g); 1383(c).

## II. STANDARD OF REVIEW

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the

evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. *Burch*, 400 F.3d at 679. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Id.* The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**A. Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, the ALJ will make a finding of non-disability. *Id.* If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then the ALJ makes a finding of non-disability. *Id.* If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement, then the ALJ makes a finding of disability. *Id.* § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence." 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). *See* 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work the individual performed within the past 5 years. *Id.* § 404.1560(b)(1)(i). The work must have also lasted long enough for the individual to learn the job and performed an SGA. *Id.* If the individual has the RFC to perform her past work, then the ALJ makes a finding of non-disability. *Id.* § 404.1520(a)(4)(iv). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If can do other work, then the ALJ makes a finding of non-disability. *Id.* Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. *See Bowen*, 482 U.S. at 141–42. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Id.*

**B. The ALJ Decision**

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had had not engaged in substantial gainful activity during the period since her alleged onset date of September 2, 2021. AR 25. At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, chronic pain syndrome, obesity, bipolar disorder with psychotic features, generalized anxiety disorder, posttraumatic stress disorder (PTSD), and substance abuse disorder. *Id.* at 26. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.*

Before proceeding to step four, the ALJ found Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations. *Id.* at 28. As relevant to this order, the ALJ found the evidence supported that Plaintiff could understand, remember, and carry out simple instructions; could occasionally interact with coworkers and supervisors; could not interact with the public; and could deal with occasional changes in a routine work setting. *Id.*

At step four, the ALJ found that Plaintiff was unable to perform any past, relevant work. *Id.* at 32. At step five, and with the assistance of the vocational expert (VE), the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could perform. AR 33. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. *Id.* at 34.

## II. ANALYSIS

Plaintiff moves to reverse the Commissioner's decision and either remand for further administrative proceedings or award benefits. ECF No. 12 at 15. She specifically challenges the ALJ's RFC determination as it pertains to Plaintiff's limitations in understanding and remembering instructions and the ALJ's reliance on the VE's testimony when deciding whether there were jobs existing in significant numbers that Plaintiff could perform. *Id.* at 5, 8–9. The Commissioner responds that the ALJ reasonably discredited the medical opinion of one of Plaintiff's evaluating psychiatrists and properly assessed Plaintiff's subjective allegations in determining the RFC. ECF No. 14 at 4, 7. The Commissioner also argues that the ALJ properly found that Plaintiff could perform jobs that exist in significant numbers. *Id.* at 7. The Commissioner contends that the ALJ's analysis is supported by substantial evidence and is free of reversible legal error, so the ALJ's decision should be affirmed. ECF No. 14 at 12.

### A. The ALJ erred in discounting the medical opinion of Dr. Fabella-Hicks in determining Plaintiff's RFC.

Plaintiff argues that the ALJ erred in rejecting the limitations assessed by the psychological consultative examiner, Dr. Fabella-Hicks, particularly as it pertains to Plaintiff's ability to follow one- and two-step instructions. ECF No. 12 at 5. She argues that the ALJ did not provide any support or explanation to support his finding that such a limitation was not

vocationally defined. *Id.* The Commissioner argues that the ALJ adequately considered the supportability of Dr. Fabella-Hick's medical opinion and found that she failed to provide sufficient explanation of the extent of the limitations of the opinion. ECF No. 14 at 5.

The Social Security regulations establish the required method for assessing differing medical opinions. An ALJ assessing differing medical opinions should not defer or give specific evidentiary weight to any medical opinions or prior administrative medical findings. 20 C.F.R. § 416.920c(a). Instead, for claims filed after March 2017, the ALJ must consider each medical opinion and prior administrative finding to determine persuasiveness by looking at supportability and consistency. *Id.* Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Still, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. As discussed above, under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193.

Here, the Plaintiff's record contained three consultative exams. Two were from agency consultants[3] and one was from Dr. Fabella-Hicks. AR 140–41, 160–61, 741–46. The ALJ found Dr. Fabella-Hicks's opinions only partially persuasive to the extent that she opined that Plaintiff had mild-to-moderate limitations interacting with supervisors and coworkers. *Id.* at 32. The ALJ found that these limitations were supported by Dr. Fabella-Hicks's examination findings noting

[3] The ALJ found the agency consultants' opinions to be persuasive, but found that "the ability to understand, remember, and carry out simple instructions [was] a better articulation of the limitation articulated by the State agency psychological consultants." AR 31. Plaintiff does not contest the ALJ's findings as to the agency consultants' opinions.

Plaintiff's sad mood and tearful affect. *Id.* at 32, 743. He also found the limitation consistent with Plaintiff's own testimony that she turns off her phone and does not want to talk to people. *Id.*

However, the ALJ found Dr. Fabella-Hicks's functional assessment unpersuasive because of the term that she used regarding Plaintiff's cognitive function. *Id.* at 32. Specifically, the ALJ found the conclusion that Plaintiff could follow one or two step instructions "[was] not vocationally defined". *Id.* Because the term "one- to two-step instructions" was not vocationally defined, the ALJ found that Dr. Fabella-Hicks's opinion did not adequately articulate Plaintiff's limitation for use in an RFC. *Id.*

This Court identifies two issues with the ALJ's determination that Dr. Fabella-Hicks's opinion was unpersuasive. First, the ALJ's decision did not discuss the supportability or consistency factors as to Dr. Fabella-Hicks's opinion. Thus, this Court cannot find that the ALJ's explanation discrediting Dr. Fabella-Hicks's opinion and refusal to incorporate the limitation to one- to two step tasks into Plaintiff's RFC is supported by substantial evidence. *See Woods*, 32 F.4th at 787. Second, the ALJ's discrediting of Dr. Fabella-Hicks's opinion that Plaintiff could perform one- to two step tasks leaves a question as to whether the ALJ properly found that a significant number of jobs existed in the national economy that Plaintiff could perform at step five.

The ALJ was incorrect to state that a limitation to one- to two step tasks "is not vocationally defined". The Dictionary of Occupational Titles ("DOT") describes the requirements for each listed occupation, including the General Educational Development ("GED") levels. *DOT* (4th Ed. 1991), App. C, § III, 1991 WL 688702. There are six GED Reasoning Levels that range from level one (simplest) to Level Six (most complex). *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015). Level one reasoning requires a claimant "apply commonsense understanding to carry out simple one-step or two-step instructions." *Id.* Level two reasoning requires a claimant "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions". *Id.*

The ALJ's rejection of Dr. Fabella-Hicks's opinion that Plaintiff could "understand, remember, and carry out simple *one or two step instructions*" and adoption of "understanding,

remembering, and carrying out *simple instructions*" as a limitation makes it difficult to ascertain which jobs Plaintiff is capable of performing based on her GED reasoning level. AR 28, 745 (emphasis added). In *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015), the Ninth Circuit found that there is an apparent conflict between a limitation to one- to two-step tasks and the demands of level two reasoning. Since *Rounds*, district courts in this circuit have routinely found that there is a critical distinction between a limitation to "simple, routine, and repetitive tasks" and a limitation to "one- or two-step instructions." *See e.g.*, *Jones v. Berryhill*, No. CV 17-07404-AFM, 2018 WL 3689560, at * 3 (C.D. Cal. July 31, 2018); *see also Wilson v. Colvin*, No. 16-cv-01971-WHO, 2017 WL 1861839, at *6–*7 (N.D. Cal. May 9, 2017) (collecting cases and finding "significant distinction between limitations to one- to two-step instructions and RFCs allowing performance of simple, repetitive tasks.").

Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform jobs that existed in significant numbers in the national economy at step five. AR 33. Two of these jobs, office helper (DOT 239.567-010) and routing clerk (DOT 222.687-022) require level two reasoning. Without knowing whether the ALJ's limitation intended to leave out jobs at reasoning level two, it is impossible to determine whether there is an inconsistency between Plaintiff's RFC and the vocational expert's ("VE") testimony that there were significant numbers of jobs that Plaintiff could perform. This error is not harmless because the ALJ concluded that Plaintiff was not disabled based on the VE's testimony. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006) (finding that An ALJ's error is harmless only if it is found to be "inconsequential to the ultimate non-disability determination" and if the court "can confidently conclude that no reasonable ALJ, when [not making the same error] could have reached a different disability determination."). Thus, remand is warranted for further proceedings.

**B. The ALJ did not adequately support his rejection of Plaintiff's subjective symptom testimony when determining her RFC, but the error is harmless.**

Plaintiff argues that the ALJ erred in rejecting her subjective symptom testimony. ECF No. 12 at 10. Plaintiff argues that the ALJ "mischaracterized and cherry picked the record" when

he rejected her testimony on the basis that she was able to perform normal activities of daily living. *Id.* at 12. She argues that her ability to remain stable and follow a structured routine in her home with assistance does not equate to her ability to handle stressors in a work setting. *Id.* at 13.[4] The Commissioner argues that the ALJ reasonably found that Plaintiff's allegations were not consistent with the medical evidence and that Plaintiff's daily activities contradicted the alleged extent of her mental health symptoms. ECF No. 14 at 7.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotation marks omitted). A claimant is not required to show her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could have reasonably caused some degree of that symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

Here, Plaintiff testified to suffering limitations linked to her mental health. She was assessed for work limitations based on depression, anxiety disorder, schizophrenia, bipolar, and PTSD. *See* AR 741. During her hearing, Plaintiff testified that she had difficulty remembering and handling a group of more than a few people. *Id.* at 81, 84.

For the first step of the analysis, the ALJ a found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.* at 29. For the

---

[4] Plaintiff also argues that the ALJ's finding that Plaintiff had moderate limitations in memory and concentration was improper because RFC is an assessment of the sustained, work-related activities Plaintiff is capable of. ECF No. 12 at 12. However, the ALJ's finding that Plaintiff had moderate limitations in these areas applied specifically to his findings at step three, not Plaintiff's RFC determination. Because Plaintiff does not otherwise contest the ALJ's findings at step three, this Court does not address this argument.

second step, the ALJ considered Plaintiff's testimony as to her mental health symptoms and compared that testimony to statements in her August 2023 function report. *Id.* at 30.

The ALJ found that Plaintiff's testimony was not entirely consistent with her function report. *Id.* The ALJ found that Plaintiff's report that she helped her children get ready for school, took care of her children, made simple meals, cleaned, did laundry, shopped in stores with help from her children, and paid bills suggested that she was not as limited as she alleged and that she retained the capacity to perform activities consistent with competitive work. *Id.*

The Ninth Circuit has held that the fact that a plaintiff has carried on certain daily activities does not detract from her credibility as to her overall disability. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Rather, "[t]he ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation omitted). The ALJ here did not explain how helping children get ready for school, making simple meals, cleaning, doing laundry, shopping in stores with help, and paying bills transfer to a work setting. In fact, the ALJ acknowledged that Plaintiff's ability to perform these activities did not necessarily prove that she could obtain and maintain employment. AR 30. And although the ALJ noted that Plaintiff retained the capacity to perform activities consistent with competitive work, he did not describe what those activities were. *Id.* This Court finds that the ALJ failed to give "specific, clear, and convincing reasons" as to why he discredited Plaintiff's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

Further, the ALJ's findings regarding Plaintiff's daily activities are not fully consistent with Plaintiff's August 2023 function report. While it is true that Plaintiff reported she helped care for her kids, Plaintiff's response indicates that her daughter was the one taking care of her siblings and that Plaintiff was merely helping her daughter. AR 427. Although Plaintiff indicated that she had no problem with personal care, she also indicated that her kids reminded her when it was time to shower. *Id.* Plaintiff did report that she could help clean and help with laundry, but she did not indicate that she could perform these tasks independently. *Id.* In response to a question of whether she needed help or encouragement doing these things, Plaintiff explicitly

stated that she needed help with everything. *Id.* And while Plaintiff indicated that she went shopping with the help of her kids, she also stated that she could not go out alone because she did not want "those people outside to get [her]". *Id.* at 429.

The Commissioner argues that the ALJ not only dismissed Plaintiff's testimony due to inconsistencies between Plaintiff's daily activities and her testimony, but because Plaintiff's symptom allegations were not consistent with the objective medical evidence and because Plaintiff's positive response to treatment contradicted her allegations of disabling symptoms and limitations. ECF No. 14 at 8–9. Although the ALJ reviewed his findings as to Plaintiff's medical records in his decision, including Plaintiff's positive response to treatment, he did not connect these findings to his discussion regarding Plaintiff's testimony. AR 30. In his discussion discrediting Plaintiff's testimony, the ALJ only vaguely stated that Plaintiff had made inconsistent statements and had acknowledged that she engaged in the activities of daily living listed above. *Id.* This Court may not affirm the ALJ's credibility determination based on reasons not articulated by the ALJ. *See Bray v. Comm'r. Social Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). Thus, this Court will not consider the Commissioner's additional argument as to why the ALJ rejected Plaintiff's testimony.

Nevertheless, this Court finds that the ALJ's error was "inconsequential to the ultimate non-disability determination". Given Plaintiff's medical records showing improvement with medication (AR 779, 792, 803, 805, 809, 811, 814) and differing opinions as to Plaintiff's ability to carry out instructions, maintain concentration, and sustain an ordinary routine without special supervision (AR 148, 165, 745); it is possible that a reasonable ALJ that had properly considered Plaintiff's testimony could have reached the same disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). Accordingly, this Court affirms the ALJ's RFC determination to the extent that it was based on the discrediting of Plaintiff's subjective symptom testimony.

//

//

**C. The ALJ did not properly consider the conflict between the VE's testimony and the DOT.**

Finally, Plaintiff argues that the ALJ erred by failing to address a conflict between the VE's testimony that a claimant with Plaintiff's RFC could perform position of cleaner/housekeeper. ECF No. 12 at 7. Plaintiff contends the DOT description of cleaner/housekeeper requires the rendering of "personal assistance to patrons" and that such a requirement conflicts with Plaintiff's limitation that she cannot interact with the public. The Commissioner does not attempt to justify or explain the discrepancy but argues that even if the ALJ did err in finding that Plaintiff could perform the job of cleaner/housekeeper, such an error would be inconsequential because the ALJ identified 242,000 other jobs in the national economy that Plaintiff could perform. ECF No. 14 at 6.

Although the Ninth Circuit has not directly addressed the conflict between the position of cleaner/housekeeper and an RFC limitation to no public contact, several district courts in the Ninth Circuit have held that the role of cleaner/housekeeper potentially conflicts with an RFC limitation of no interaction with the public. *See Tainter v. Kijakazi*, No. 1:20-cv-01170-GSA, 2023 WL 1767736, at *9 (E.D. Cal. Feb. 3, 2023); *Norris v. Colvin*, No. EDCV 12-1687 RNB, 2013 WL 3676661, at *3 (C.D. Cal. July 11, 2012); *Pardue v. Astrue*, No. EDCV 10-1830-DTB, 2011 WL 5520301, at *5 (C.D. Cal. Nov. 14, 2011). This Court finds these cases persuasive.

"When there is an apparent conflict between the VE's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than a claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)). The ALJ must ask the VE to explain the conflict and then determine whether the explanation is reasonable before relying on the VE's testimony rather than the DOT to reach a disability determination. *Id.*

Here, the ALJ asked the VE whether there were any conflicts between the VE's testimony and the information in the DOT. AR 95. The VE responded affirmatively, stating that she provided opinions on some matters that are not discussed in the DOT such as time off task,

absences, interactions with supervisors, coworkers, and the public; and occasional changes in work setting. *Id.* at 96. She stated that she based her answers on her education, training, and experience; including over 21 years as a vocational rehab counselor. *Id.* The ALJ determined that the VE's testimony was consistent with the DOT and found that Plaintiff could perform the position of "cleaner", with 380,000 positions in the national economy. *Id.* at 33.

Despite the VE's assertion that the DOT did not discuss public interaction requirements, the DOT listing for cleaner/housekeeper explicitly states that a cleaner/housekeeper performs a combination of duties including "render[ing] personal assistance to patrons". DOT No. 323.687-014. Because the ALJ failed to recognize this inconsistency, she did not ask the VE to explain it. Therefore, it is unclear why the VE believed, based on her education, training, and experience, that a person with Plaintiff's RFC limitations could perform the job of cleaner/housekeeper and the ALJ erred in failing to reconcile this conflict.

Although the Commissioner contends any error is harmless because the ALJ identified a significant number of jobs Plaintiff could do outside of the position of cleaner/housekeeper, there is a question of whether Plaintiff is able to meet the reasoning level requirements of the other two identified positions.[5] Accordingly, remand for further proceedings on this issue is appropriate.

**D. This Court will not award benefits because the credit as true test has not been met.**

Plaintiff argues that since Plaintiff cannot perform the essential functions of work, this Court should reverse and award of benefits. ECF No. 12 at 15. She neither cites the three-part rule nor explains why the facts of his case satisfy the test. *Id.* The Commissioner responds that Plaintiff provides no argument to show how she meets the stringent criteria for this rare remedy. ECF No. 14 at 13. The Commissioner argues that this Court should therefore affirm the ALJ's disability determination. *Id.*

When an ALJ rejects evidence without providing legally sufficient reasons, the court may grant a direct award of benefits when certain conditions are met. *Garrison v. Colvin*, 759 F.3d

---

[5] *See supra* Section II(A).

995, 1020 (9th Cir. 2014). The three-part analysis of such conditions is known as the "credit-as-true" test. *Id.* The credit-as-true test first asks (1) whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion, and (2) whether there are outstanding issues that must be resolved and whether further administrative proceedings would be useful. *Id.* at 1020; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). When the first two conditions are satisfied, the court then credits the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability. *Treichler*, 775 F.3d at 1101. But even after reaching the third step and crediting the claimant's testimony as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings. *Id.* at 1101–02.

As explained above, this Court finds that at the first step the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's testimony as to her mental health limitations. At step two, the court considers whether the record as a whole is free from conflicts, ambiguities, or gaps, and whether all factual issues have been resolved. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

Plaintiff makes no case-specific argument regarding step two. Still, the record is unclear as to whether Plaintiff is able to perform the positions identified by the VE due to her RFC requiring simple instructions and no public contact. This case therefore does not fit in with the category of cases in which the credit-as-true test was satisfied. *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (vocational expert "specifically opined" about potential limitations); *Garrison*, 759 F.3d at 1022 (same); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (vocational expert testimony "clearly established" claimant could not perform any substantial gainful work).

Since further administrative proceedings are necessary, this Court need not reach the third step of the analysis to determine that the credit-as-true test has not been satisfied. *Treichler*, 775 F.3d at 1107. This Court remands the case for further proceedings on (1) Plaintiff's RFC, to the extent it rests on the adoption or rejection of consultative opinions as to Plaintiff's mental

functioning, and (2) whether a significant number of jobs exist in the national economy that Plaintiff can perform given Plaintiff's reasoning level and no-public-contact limitation.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and remand (ECF No. 12) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment in favor of Plaintiff consistent with this Order and close this case.

DATED: November 10, 2026

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE